**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>SS Body Armor I, Inc., *et al*., f/k/a Point Blank Solutions, Inc., *et al*.,<br><br>Debtors. | Chapter 11<br><br>Case No. 10-11255 (CSS)<br><br>(Jointly Administered) |
| JON JACKS,<br><br>Appellant,<br><br>v.<br><br>THE RECOVERY TRUST FOR SS BODY ARMOR I, INC., *et al*., f/k/a POINT BLANK SOLUTIONS, INC., *et al*. and SS BODY ARMOR I, INC. *et al*.,<br><br>Appellees. | USDC Civ. Action No. 21-896 (MN) |

**LIMITED OBJECTION OF APPELLEES RECOVERY TRUST AND POST-CONFIRMATION DEBTOR TO MOTION OF CARTER LEDYARD & MILBURN LLP TO DISMISS THAT PORTION OF APPEAL RELATING TO APPROVAL OF THE CLM SETTLEMENT**

The Recovery Trust for SS Body Armor I, Inc., *et al*., f/k/a Point Blank Solutions, Inc., *et al.* (the "Recovery Trust"), by and through Brian K. Ryniker, as Recovery Trustee (the "Recovery Trustee") and SS Body Armor I, Inc. (the "Post-Confirmation Debtor"), by and through T. Scott Avila, as Post-Confirmation Debtor Representative (the "Post-Confirmation Debtor Representative" and, together with the Recovery Trustee, the "Estate Fiduciaries"), hereby submit their *Limited Objection* in response to Carter Ledyard & Milburn's ("CLM") *Motion to Dismiss that Portion of*

*Appeal Relating to Approval of the CLM Settlement* (the "Motion to Dismiss") [Docket No. 18].[1]

**PRELIMINARY STATEMENT**

1. Although the Estate Fiduciaries do not object to limiting the issues on appeal, CLM's Motion to Dismiss goes too far by seeking relief that (a) is contrary to the terms of the CLM Settlement,[2] and (b) would expose the Estate Fiduciaries to substantial risk in the event Jacks is successful with respect to the issues he has appealed, including but not limited to those related to the Order Granting Motion to Extend Term of Recovery Trust, dated June 10, 2010 [D.I. 4609] (the "Trust Extension Order"). Consequently, the Estate Fiduciaries cannot and will not pay CLM while these appeals are pending.

2. The CLM Settlement only becomes effective on the CLM Settlement Effective Date (as that term is defined in the CLM Settlement). The CLM Settlement Effective Date cannot occur until the resolution of "any appeal(s)" from the Orders approving (I) the settlements with CLM and the Class Plaintiffs, (II) the Dissolution Protocol, (III) the Final Decree, or (IV) any related relief. The appeals from these orders have not been resolved and, as such, the CLM Settlement Effective Date has not occurred. There is no basis for CLM to demand payment or to request that this Court order the Estate Fiduciaries to make payments on account of a settlement with agreed-upon conditions precedent that have not been fully satisfied.

3. Relatedly, the CLM Settlement was also specifically premised upon each party being "authorized to sign this Settlement Agreement." Although the Recovery Trustee and Recovery Trust professionals believe they were authorized to sign the CLM Settlement on behalf of the Recovery

[1] References to "Docket No." refer to docket entries in this appeal, whereas references to "D.I." refer to docket entries in the underlying bankruptcy case, No. 10-11255 (CSS).

Trust, which the Bankruptcy Court confirmed in its Trust Extension Order, this issue is live on appeal. Jacks alleges that the Recovery Trust expired and, as such, the Recovery Trustee lacked authority to, among other things, enter into settlements. In addition, Jacks filed a motion to remove the Estate Fiduciaries and professionals, require disgorgement, and appoint new fiduciaries to pursue litigation against the Estate Fiduciaries and their professionals. Although the Bankruptcy Court correctly rejected Jacks' arguments and requests for relief, Jacks has appealed the Bankruptcy Court's Orders. The Estate Fiduciaries are not willing (and should not be required) to subject themselves to risk of further accusations by Jacks or other equity holders that they paid $3.75 million without authority or otherwise in violation of the CLM Settlement.

4. Moreover, CLM is a sophisticated party who understood and freely undertook the risks and rewards of entering into a global settlement and case resolution structure. Among these risks was the requirement to wait for the global settlement and case resolution structure to be approved and affirmed on appeal—a risk that was baked into the reward of a $3.75 million allowed claim. Although the Estate Fiduciaries disputed that CLM was entitled to a claim of that amount, they compromised the dispute as part of a broader effort to bring finality to 10 year-old bankruptcy case. That finality has not been achieved and will not be achieved until the resolution of Jacks' appeals.[3] No party to the CLM Settlement—including the Estate Fiduciaries—may access its benefits shorn of its burdens. Accordingly, CLM's Motion to Dismiss must be denied to the extent it seeks anything other than a clarification or tailoring of the issues on appeal.

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion to Dismiss.

[3] Further, it is unclear why the timing of CLM's payment must be decided now. All issues before this Court stem from a consolidated three-day evidentiary hearing before the Bankruptcy Court and

## RELEVANT BACKGROUND

5. On February 23, 2021, the Post-Confirmation Debtor, Recovery Trust, and CLM entered into the CLM Settlement. A true and correct copy of the CLM Settlement is attached hereto as **Exhibit A**.

6. The CLM Settlement resolved a longstanding dispute between the Estate, on the one hand, and CLM, on the other hand, regarding the amount of CLM's unsecured claim. The CLM Settlement was premised upon an agreed sharing of a $5 million reserve established by the Bankruptcy Court for the potential payment of CLM's claim, *see* Order Establishing Reserve [D.I. 4049], effective upon (i) the Bankruptcy Court's approval of the Recovery Trust's *Motion for Orders (I) Approving Settlements with Class Plaintiffs and Carter Ledyard & Milburn LLP; (II) Authorizing Dissolution Protocol; (III) Entering Final Decree; and (IV) Granting Related Relief* [D.I. 4547] (the "Approval and Closure Motion"), and (ii) the resolution of any appeals therefrom.

7. Specifically, the CLM Settlement provides that "CLM shall receive **three million seven hundred fifty thousand dollars ($3,750,000.00)** from the CLM Fee Reserve within three (3) business days following the CLM Settlement Effective Date." CLM Settlement, ¶ 3 (emphasis in original).[4]

8. The "CLM Settlement Effective Date" is defined as follows:

> CLM will receive **three million seven hundred fifty thousand dollars ($3,750,000.00)** (the "CLM Fee Payment") from the CLM Fee Reserve within three (3) business days following the later of (i) entry by the Court of the Order (I) Approving Settlements with Class Plaintiffs and Carter Ledyard & Milburn LLP; (II) Authorizing Dissolution Protocol; (III) Entering Final Decree; and (IV) Granting Related Relief (the "Final Order"), and the expiration of time to appeal the Final Order, provided that the Final Order is not stayed and no

---

all appellate rulings requested in connection with that hearing should be decided in consolidated fashion on the same timeline.

[4] Similarly, "[u]pon the CLM Settlement Effective Date, the $1,250,000 balance of the CLM Fee Reserve will be transferred to the Recovery Trust." CLM Settlement, ¶ 4.

> appeal(s) has been taken from the Final Order, or (ii) resolution of any appeal(s) from the Final Order, provided that the Final Order is not reversed, stayed, modified or amended on appeal (the "CLM Settlement Effective Date").

CLM Settlement, p. 9 (emphasis in original).

9. Further, the CLM Settlement provided that the "individuals signing this Settlement Agreement represent and warrant that they are authorized to sign this Settlement Agreement on behalf of the entity or entities for which they have so signed." CLM Settlement, ¶ 12.

10. As CLM understood at the time the CLM Settlement was executed, Jacks had filed an *Objection to Motion to Extend Term of the Recovery Trust* [D.I. 4544] ("Trust Extension Objection"), in which he argued that the Recovery Trust was "dead". Accordingly, as CLM also understood, the Approval and Closure Motion specifically requested a finding that, "in light of the statements made in Mr. Jacks' Objection to the Motion to Extend Trust, . . . it is critical to all Settlement Parties that the Proposed Settlements achieve certainty and finality, which necessitates a finding from this Court that the Recovery Trust remains authorized to enter the Proposed Settlements." Approval and Closure Motion, ¶ 74.[5]

11. After filing his Trust Extension Objection, Jacks filed a *Motion for an Order Removing Estate Fiduciaries for Cause, Requiring Disgorgement of Fees and Related Relief* [D.I. 4550] ("Removal Motion"), in which he (a) made various false and defamatory accusations against the Estate Fiduciaries and their professionals, (b) reiterated his contention that the Recovery Trust was dissolved, (c) contended that fiduciaries and professionals should be removed from their

---

[5] CLM previously joined with Jacks in questioning "the authority of the Recovery Trustee . . . to act." *Statement of Carter Ledyard in Support of Motion for an Order Re-Establishing a Recovery Trust* [D.I. 4495], p. 5. Although CLM abandoned that position when it supported the Approval and Closure Motion, *see Statement of Carter Ledyard in Support of Settlement with Recovery Trust* [D.I. 4549], p.8 & note 4, the Approval and Closure Motion made clear that resolution of the issue was integral to the global settlement before the Bankruptcy Court. Approval and Closure Motion, p. 30.

positions, and (d) sought to install a new trustee to "go after" those fiduciaries and professionals. Removal Motion, pp. 10-16, 17-21, 24.

12. Jacks then filed his *Objection* [D.I. 4560] to the Approval and Closure Motion, wherein he incorporated his Trust Extension Objection and Removal Motion, and contended that the Estate Fiduciaries were conflicted and precluded from entering into settlements. Objection, pp. 2, 12-14.

13. As set forth in CLM's Motion to Dismiss, the Bankruptcy Court entered Orders rejecting Jacks' arguments with respect to the Approval & Closure Motion, Trust Extension Objection, and Removal Motion. Jacks has appealed from those Orders. *See Appellant's Designation of Items for Inclusion in the Record and Statement of Issues Presented on Appeal* [D.I.. 4633] (the "Statement of Issues on Appeal"). As a result, the CLM Settlement Effective Date has not occurred and CLM's Motion to Dismiss must be denied to the extent it seeks any relief under the CLM Settlement.

## LIMITED OBJECTION

### A. The CLM Settlement Effective Date Has Not Occurred

14. "Settlement agreements are construed according to traditional precepts of contract construction." *Future Fibre Technologies Pty. Ltd. v. Optellios, Inc.*, No. 09-346, 2011 WL 3563341 (D. Del. Aug. 15, 2011) (citing *In re Columbia Gas System, Inc.*, 50 F.3d 233, 238 (3d Cir.1995)). Among these precepts is the objective of "reconcil[ing] all of the agreement's provisions when read as a whole, giving effect to every term," such that the Court's construction of the agreement "does not render any provision 'illusory or meaningless.'" *Id*. (quoting *MicroStrategy*,

*Inc. v. Acacia Research Corp*., No. 5735–VCP, 2010 WL 5550455, at *5 (Del. Ch. Dec. 30, 2010)).[6] "If a settlement agreement's language is 'clear and unambiguous,' the ordinary meaning of the language generally will establish the parties' intent." *Id*. (quoting *MicroStrategy, Inc.*, 2010 WL 5550455, at *5). "Ambiguity does not exist simply because the parties do not agree on the proper construction of the document." *Id*.

15. The CLM Settlement states clearly and in no uncertain terms that the payment of $3.75 million to CLM is contingent on the occurrence of the CLM Settlement Effective Date, which has not occurred and will not occur until the resolution of Jacks' appeals. Specifically, the CLM Settlement Effective Date cannot occur until after the later of: "(i) entry by the Court of the Order (I) Approving Settlements with Class Plaintiffs and Carter Ledyard & Milburn LLP; (II) Authorizing Dissolution Protocol; (III) Entering Final Decree; and (IV) Granting Related Relief (the "Final Order") . . . or (ii) resolution of any appeal(s) from the Final Order, provided that the Final Order is not reversed, stayed, modified or amended on appeal." CLM Settlement, p. 9 (emphasis in original).

16. The first clause of the definition of CLM Settlement Effective Date does not limit the required "Final Order" to the portion thereof approving the CLM Settlement. Rather, the definition expressly, unambiguously and deliberately encompasses the entirety of the relief sought through the Approval and Closure Motion, including approval of the CLM Settlement, the Class Plaintiff settlement, the Final Decree, the Dissolution Protocol, and any related relief (*e.g.*, the Bar Order/Litigation Prohibition).

---

[6] The CLM Settlement should be construed in accordance with Delaware law, as the Post-Confirmation Debtor is a Delaware corporation, the agreement was signed in Delaware, and the CLM Settlement resolves a dispute pending in a Delaware Federal court. However, even if New York law were to apply, the same principles govern. *See, e.g.*, *N.Y. State Thruway Auth. v. KTA-Tator Eng'g Serv.*, P.C., 913 N.Y.S.2d 438, 440 (N.Y. App. Div. 2010) ("It is well settled that a contract must be read as a whole to give effect and meaning to every term . . . .").

17. The Bankruptcy Court entered two Orders approving, collectively, each component of the relief sought through the Approval and Closure Motion. Jacks is appealing several of those components. Even if he is not directly appealing the propriety of the CLM Settlement itself, he is appealing the Recovery Trust's continued existence and the authority of the Recovery Trustee to enter into settlements.[7] As a result, by the plain terms of the CLM Settlement, the CLM Settlement Effective Date has not occurred. Because the CLM Settlement Effective Date has not occurred, the Estate Fiduciaries cannot and should not be required to pay CLM in derogation of the express CLM Settlement terms which were on notice to 11,000 parties in interest in the bankruptcy case.

18. All of these issues in this matter were litigated in consolidated fashion and cannot be diced up and separated for CLM's convenience while the appeals remain pending. That is precisely why the CLM Settlement was drafted to become effective *after* the resolution of all issues arising from the Approval and Closure Motion—rather than after final approval of the CLM Settlement terms alone. CLM is a sophisticated party, understood the risk of delay, and entered into the agreement despite that risk. Indeed, the amount of the settled CLM Fee Payment reflects such risks. CLM (like the Recovery Trust) must now wait until Jacks' appeals are resolved before receiving payment from the reserve and other benefits of the settlement.

### B. The Estate Fiduciaries Should Not Be Required to Distribute Funds While the Trust Extension Objection and Removal Motions Are on Appeal

19. In addition to the fact that a condition precedent to CLM's payment has not been met (*i.e.*, the effective date of the settlement giving rise to that payment), the Estate Fiduciaries have serious concerns about simply disseminating $3.75 million to a creditor in violation of the settlement

[7] Jacks' appeal of the settlement with the Class Plaintiffs but not the CLM Settlement is telling, and appears to be a concession that the Recovery Trust in fact had authority to enter into the CLM Settlement and thus, by extension, the settlement with the Class Plaintiffs.

while an equity holder's fervent attempt to extenerate their authority and pursue litigation against them remains pending on appeal.

20. The Estate Fiduciaries' authority to enter into settlements was specifically incorporated into the CLM Settlement for a reason: Jacks was actively disputing whether the Recovery Trust was capable of acting. Jacks still takes this position. In his Statement of Issues on Appeal, Jacks raises the question of whether the Recovery Trustee lost "all authority" under the Recovery Trust Agreement.

21. In the (unlikely) event Jacks were to prevail on his appeals with respect to Approval and Closure Motion, Removal Motion, and/or Trust Extension Objection, the Estate Fiduciaries will be left in the precarious position of having distributed a substantial amount of funds from a Recovery Trust that Jacks claims has dissolved and lacks authority. There is no justification, equitable or otherwise, for putting the Estate Fiduciaries in such a position or requiring the Estate Fiduciaries to partially implement aspects of a global settlement and case resolution protocol that was clearly and expressly designed to be implemented in unison.

22. Nonetheless, the Estate Fiduciaries do not object to clarifying or narrowing the issues on appeal in accordance with Jacks' Statement of Issues on Appeal, which does not appear to specifically raise a question as to the merits of the CLM Settlement. To the extent, however, that CLM seeks further relief, including an order requiring the Estate Fiduciaries to distribute funds pursuant to the CLM Settlement, the Motion to Dismiss must be denied.

[*Remainder of Page Intentionally Left Blank*]

## CONCLUSION

23. For the reasons described above, the Estate Fiduciaries respectfully request that CLM's Motion to Dismiss be DENIED.

Dated: August 13, 2021

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ James E. O'Neill*
Laura Davis Jones (DE 2436)
Alan J. Kornfeld (admitted *pro hac vice*)
James E. O'Neill (DE 4042)
Elissa A. Wagner (admitted *pro hac vice*)
919 North Market Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
akornfeld@pszjlaw.com
joneill@pszjlaw.com
ewagner@pszjlaw.com

*Counsel to the Post-Confirmation Debtor*

**THE ROSNER LAW GROUP LLC**

*/s/ Jason A. Gibson*
Frederick B. Rosner (DE 3995)
Scott J. Leonhardt (DE 4885)
Jason A. Gibson (DE 6091)
824 N. Market Street, Suite 810
Wilmington, Delaware 19801
Telephone: (302) 777-1111
Email: rosner@teamrosner.com
leonhardt@teamrosner.com
gibson@teamrosner.com

**ARENT FOX LLP**

George P. Angelich (admitted *pro hac vice*)
Beth M. Brownstein (admitted *pro hac vice*)
1301 Avenue of the Americas, 42nd Floor
New York, New York 10019
Telephone: (212) 484-3900
Facsimile: (212) 484-3990
Email: george.angelich@arentfox.com
beth.brownstein@arentfox.com

Jackson D. Toof (admitted *pro hac vice*)
1717 K Street, N.W.
Washington, DC 20006
Telephone: (202) 857-6000
Facsimile: (202) 857-6395
Email: jackson.toof@arentfox.com

*Counsel to the Recovery Trust*